

# THE ATTORNEY GENERAL
## OF TEXAS

WAGGONER CARR
ATTORNEY GENERAL

AUSTIN 11, TEXAS
December 2, 1963 *Modified by C-215*

Honorable H. L. Bengtson
Deputy Banking Commissioner
Department of Banking
John H. Reagan State Office Building
Austin, Texas

Opinion No. C-187

Re: Whether a cemetery
association may make pre-
payments into its perpet-
ual care trust fund of
those funds required under
Article 912a-15, V.C.S., to
be deposited upon receipt
of final purchase price of
interment properties en-
titled to perpetual care
and a related question.

Dear Mr. Bengtson:

Your letter requesting the opinion of this office reads as follows:

> "A cemetery association operating under
> the provisions of Article 912a, Vernon's
> Civil Statutes, has in the past deposited
> funds to its Perpetual Care Trust Fund in
> excess of the legal minimum requirements
> thereby creating a surplus in the Trust
> Fund. The corporation has stated that such
> surplus had resulted from advanced payments
> having been made to the Trust Fund by the
> stockholders of the corporation in anticipa-
> tion of estimated sales of interment pro-
> perties.
>
> " . . . .
>
> "Previous examinations conducted by this
> Department reveal that no deposits have been
> made in the Perpetual Care Trust Fund from
> the sale of deeded property for approximately
> four (4) years. The corporation has indicated
> that this procedure was based upon their assump-
> tion that the advances made to the Trust Fund by
> the stockholders in anticipation of sales to be

made more than met the minimum legal requirements of property actually sold and therefore no additional deposits were necessary when the anticipated sales were completed.

"No part of the surplus in the Trust Fund resulted from property bequeathed, granted or given to the cemetery under the provisions of Article 912a-18, V.C.S.

"I request your opinion in answer to the following questions:

1. May the stockholders of a cemetery association prepay funds into its Perpetual Care Trust Fund, either in advance of sales or during the life of a time-payment contract rather than at the time final payment is made?

2. If your answer to the foregoing question is 'Yes', then where such a surplus to a Perpetual Care Fund exists from such payments, may credit be taken against such surplus from the sales of property entitled to perpetual care until the surplus has been depleted?

3. Are contributions or donations received from the stockholders of a cemetery association over and above legal requirements to be considered in the same light as contributions or donations from third parties under the provisions of 912a-18, V.C.S.?"

Although Senate Bill 121, Acts 58th Leg., R.S. 1963, ch. 495, p. 1298, sec. 3, hereinafter referred to, recently amended Article 912a-15, Vernon's Civil Statutes /Acts 49th Leg., R.S. 1945, ch. 340, p. 559, sec. 15/, as amended, your opinion request concerns the obligations imposed upon a cemetery association in respect to its perpetual care trust fund as such obligations existed under the former Article 912a-15, V.C.S.

The first two questions posed in your request can be reduced into the single question of whether or not a cemetery association may make prepayments into its perpetual care trust fund of those funds required under Article 912a-15, Vernon's Civil Statutes,

to be deposited upon the receipt of the final purchase price of each interment property entitled to perpetual care. It is our opinion that such prepayments cannot be made.

The pertinent portions of Article 912a-15, V.C.S., prior to Senate Bill 121, are as follows:

> "Every cemetery association . . . which has established and is now maintaining, operating and/or conducting a perpetual care cemetery, and every association which shall hereafter establish, maintain, operate and/or conduct, a perpetual care cemetery within this State pursuant to this Act, shall establish. . . an endowment fund . . . . The principal of such fund for perpetual care shall never be voluntarily reduced, but shall maintain /remain/ inviolable and shall forever be maintained separate and distinct by the trustee or trustees from all other funds. . . . And the net income arising therefrom shall be used solely for the general care and maintenance of the property entitled to perpetual care in the cemetery for which the fund is established, . . . but shall never be used for the improvement or embellishment of unsold property to be offered for sale. . . .

> " . . . .

> "A cemetery association which has established a perpetual care fund may also take, receive, and hold therefor and as a part thereof or as an incident thereto any property, real, personal or mixed, bequeathed, devised, granted, given or otherwise contributed to it therefor.

> "The perpetual care fund authorized by this Section and all sums paid therein or contributed thereto are, and each thereof is hereby, expressly permitted and shall be and be deemed to be for charitable and eleemosynary purposes. . . .

> "Each perpetual care cemetery shall deposit in its perpetual care fund an amount equivalent to . . . a minimum of twenty cents (20¢) per square foot of ground area sold or disposed of as perpetual care property . . . . A minimum of

fifteen dollars ($15.00) per each crypt inter-
ment right <u>sold or disposed of</u> as perpetual
care property, . . . and a <u>minimum</u> of five
dollars ($5.00) per each niche interment right
<u>sold or disposed of</u> as perpetual care property
. . . . Such <u>minimum</u> requirements shall apply
to all property in which the exclusive right
of sepulture has been <u>sold and paid for</u>, whether
used for interment purposes or not.

<u>"The deposit of such funds in the perpetual
care fund shall be made within thirty (30) days
after the receipt of the final purchase price of
each lot, grave, crypt, or niche sold as property
entitled to perpetual care. . . ."</u> (Emphasis
supplied)

It is a fundamental rule of statutory construction that
there is no room for construction when the law is expressed in
plain and unambiguous language and its meaning is clear and obvious.
39 Tex.Jur. 161, Statutes, Sec. 88, and cases cited. If the
statutory language clearly and distinctly reveals the legislative
intent, there is no occasion to look elsewhere. 39 Tex.Jur. 177,
Statutes, Sec. 93.

Under its clearly mandatory language, Article 912a-15 re-
quires that each perpetual care cemetery shall establish a per-
petual care fund, and that it shall deposit in such perpetual
care fund certain "minimum" funds for various interment proper-
ties "sold or disposed of" as perpetual care properties. Also,
this provision expressly prescribes the time when "such funds"
shall be deposited, i.e., "within thirty (30) days after the
receipt of the final purchase price" of the various interment
properties entitled to perpetual care. The language of this
statutory provision is clear and unmistakable, not only as to
the minimum funds to be deposited into such trust fund, but
also as to the time when "such funds" shall be deposited. There
is no language in Article 912a-15 which purports to allow a
cemetery association to prepay into its perpetual care trust fund
the minimum funds required to be deposited "within thirty (30)
days after the receipt of the final purchase price". Interpre-
tation by implication is permitted, out of the necessity of the
case, to supply the obvious intention, where such intention is
not expressly stated. However, resort may not be had to impli-
cation if the statute is explicit to the point in question.
Creager, et al v. Hidalgo County Water Improvement District #4,
283 S.W. 151 (Comm.App. 1926); 39 Tex.Jur. 187, Statutes, Sec. 99.

We note that Article 912a-29, Vernon's Civil Statutes /Acts 54th Leg., R.S. 1955, ch. 190, p. 574, sec. 17, provides that, before being chartered under this Act, any corporation desiring to operate a perpetual care cemetery must establish a minimum perpetual care trust fund; and that, upon sales of interment properties, the deposits as required by law to be placed in such trust funds shall be allowed as a credit against the original trust fund to the full amount of the original deposit. Also, Senate Bill 121, Acts 58th Leg., R.S. 1963, ch. 495, p. 1298, sec. 3, recently amending Article 912a-15, provides in part that, if a cemetery association operating a non-perpetual care cemetery desires to operate a perpetual care cemetery, it shall ". . . establish a perpetual care fund equal to the amount which would theretofore have been paid into such fund, in accordance with provisions of this Act, if said cemetery has been operating as a perpetual care cemetery from and after the date of the first sale of burial space therein, or the minimum amount provided in Section 29 of this Act, whichever is the greater. If the amount of the perpetual care fund so established is the minimum amount provided in Section 29 of this Act, such cemetery association or corporation shall be entitled to a credit against amounts hereafter required by the provisions of this Act to be paid by it into such perpetual care fund equal to the excess of the amount of such perpetual care trust fund, as originally established by it, over what would have been the amount thereof if its amount had been determined without regard to Section 29 of this Act." Had the Legislature intended for prepayments and the subsequent credits to be allowed for the required deposits over and above that provided for in Article 912a-29 and Senate Bill 121, it could have easily done so as it did in these two instances. However, the Legislature, at the times the above amendments were enacted, chose not to provide a method of prepaying the minimum deposits required under Article 912a-15.

The holding of this opinion is further supported by the following pertinent amendments to Article 912a-15 by Senate Bill 121:

"After August 23, 1963, each agreement for the sale of burial space in a perpetual care cemetery shall set out separately the part of the aggregate amount agreed to be paid by the purchaser which is to be deposited in the perpetual care trust fund. If the aggregate amount

agreed to be paid by the purchaser is payable
in installments, all amounts paid thereon shall
be applied, first, to the part thereof not re-
quired to be deposited in the perpetual care
trust fund, to the extent thereof, and the re-
mainder shall, when received by the seller, be
deposited in the perpetual care trust fund.
Any funds required to be deposited in the per-
petual care trust fund by a seller of burial
space shall be so deposited not later than ten
(10) days after the end of the calendar month
during which they are received. . . .

"The amount to be deposited in the perpe-
tual care trust fund shall be separately shown
on the original purchase agreement and a copy
thereof shall be delivered to the purchaser.
In the sale of burial space, no commission shall
be paid a broker or salesman on the amount to
be deposited in the fund."

By this amendment, the Legislature expresses with greater clarity
the method and time by which a cemetery association hereafter or-
ganized must make the required deposits under Article 912a-15 in
its perpetual care trust fund. A method of prepaying such re-
quired funds is not contemplated by its terms.

Although it is suggested that such construction will be
harsh and burdensome, these are matters properly addressed to
the Legislature.

The last question in your request inquires into the dis-
tinction between contributions from a cemetery association to its
perpetual care fund over and above the minimum funds required
under Article 912a-15, and contributions from third parties under
the provisions of Article 912a-18, Vernon's Civil Statutes.
Article 912a-18, entitled "Special Care", provides that the trustee
of a cemetery perpetual care fund may also take and hold any pro-
perty granted or contributed to it in trust to apply the princi-
pal or income therefrom for any of the following purposes:

". . . To the improvement or embellish-
ment of such cemetery, or any part thereof, or
any lot therein, to the erection, renewal, re-
pair or preservation of any monuments, fence,
building or other structure in such cemetery;
to the planning, cultivation of trees, shrubs,

Hon. H. L. Bengtson, page 7 (C- 187 )

> or plants in or around such cemetery, or
> any part thereof; for the special care or
> ornamenting of any burial plot, lot, sec-
> tion or building or any portion thereof in
> said cemetery or to any other purpose or
> use not inconsistent with the purpose for
> which such cemetery was established or is
> being maintained. . . ."

This provison intends the establishment of special funds separate and apart from the perpetual care fund authorized under Article 912a-15. Such special funds, consisting of grants and contributions from both third parties and cemetery associations, are to be used for the upkeep and beautification of "private" blocks, lots or structures, and for the embellishment of the cemetery in which such lots, blocks or structures are located. Whereas, the perpetual care fund authorized by Article 912a-15, to which contributions over and above the legal "minimum" requirements may be made by both the cemetery association and third parties, is to be used solely for the general care and maintenance of the entire property that is entitled to perpetual care in the cemetery for which the fund is established. Care should be exercised to distinguish "prepayments" from contributions. While contributions may be made by cemetery associations and third parties under Articles 912a-15 and 912a-18, prepayment may not be made by a cemetery association of those "minimum" funds required to be deposited under Article 912a-15.

## SUMMARY

A cemetery association may not prepay into its perpetual care fund those funds required to be deposited under Article 912a-15, V.C.S.

Contributions received from third parties under the provisions of Article 912a-18, V.C.S., are to be considered different from contributions made by a cemetery association into its perpetual care fund under Article 912a-15, V.C.S.

Very truly yours,

WAGGONER CARR
Attorney General of Texas

Hon. H. L. Bengtson, page 8 (C-187  )

By  *James N. Stofer*
$\overline{\text{James N. Stofer}}$
Assistant Attorney General

JNS/jfa

APPROVED:

OPINION COMMITTEE:
George Gray, Acting Chairman

Cecil Rotsch
Milton Richardson
Paul Robertson

APPROVED FOR THE ATTORNEY GENERAL
BY:  Stanton Stone